UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELLY W.,[1]

                                        Plaintiff,          Case # 20-CV-581-FPG

v.                                                                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

## INTRODUCTION

Plaintiff Kelly W. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 19, 23. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

In summer 2016, Plaintiff applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 67-68, 80-81. She alleged disability since February 2014 due to several mental and physical impairments, including depression, bipolar disorder, and generalized anxiety

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 11.

disorder. *Id.* In December 2018, Administrative Law Judge John R. Allen ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 15-27. On March 25, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b).[3] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

**DISCUSSION**

## I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 2014, her alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff had severe impairments of bipolar disorder and generalized anxiety disorder. *Id.* At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 19.

Next, the ALJ determined that Plaintiff had the RFC to perform the full range of work at all exertional levels but with certain nonexertional limitations. Tr. 20. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 25. At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 25-27. The ALJ therefore found that Plaintiff is not disabled. Tr. 27.

## II. Analysis

Plaintiff argues that remand is warranted because, *inter alia*, the ALJ erroneously relied on his own lay opinion to craft the RFC. *See* ECF No. 19-1 at 12-20. The Court agrees.

At the hearing, Plaintiff alleged that she suffered from several mental impairments, including depression, bipolar disorder, and generalized anxiety disorder. Tr. 45. Plaintiff testified that she "just ha[s] a hard time with everything about daily living." *Id.* Basic activities are a "chore," *id.*, and she generally has "very low energy," depressed mood, and difficulty concentrating and focusing. Tr. 46-47. Plaintiff is "constantly nervous" due to her anxiety, causing her to worry about "everything" and dislike crowds. Tr. 53. At a prior job, Plaintiff had difficulty interacting with her coworkers: they "didn't get along too well," and she would "get very

nervous if it was busy [at the store]." Tr. 55.  Plaintiff also had difficulty "keeping up with the pace" of pharmacy school.  Tr. 56.

The ALJ considered several medical opinions in his decision.  S. Hennessey, a state agency consultant, reviewed Plaintiff's medical records and concluded that Plaintiff's mental impairments were nonsevere and caused only mild limitations to her functioning.  Tr. 72.  In December 2016, Janine Ippolito, Psy.D, conducted a consultative examination, after which she diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder with panic attacks.  Tr. 275.  Dr. Ippolito opined that Plaintiff was moderately limited in her ability to maintain a regular schedule and relate adequately with others and, due to her emotional distress and fatigue, markedly limited in her ability to appropriately deal with stress.  *Id.*  In November 2018, Susan Santarpia, Ph.D., conducted another consultative examination.  In her report, she diagnosed Plaintiff with bipolar II disorder and generalized anxiety disorder.  Tr. 538.  Dr. Santarpia opined that Plaintiff's only limitation was mild impairment in her abilities to interact with others and regulate emotions, control behavior, and maintain well-being.  *Id.*  Dr. Santarpia attributed these difficulties to Plaintiff's "lack of motivation."  *Id.*

The record also contains opinions from treating sources.  In July 2018, Joseph Maddi, M.D.—Plaintiff's primary care physician—opined that Plaintiff's anxiety and depression impaired her ability to focus and concentrate and caused "scattered racing thoughts."  Tr. 371.  Also in July 2018, Plaintiff's treating psychiatrist—Richard Wolin, M.D.—completed a mental impairment questionnaire.  Tr. 447.  He noted that Plaintiff was socially withdrawn, had difficulty concentrating, and had decreased energy and persistent anxiety.  *Id.*  Dr. Wolin believed that Plaintiff would be unable to maintain attention for two-hour segments, maintain regular attendance, work in coordination with or proximity to others, complete a normal workday without

5

interruption, or get along with co-workers and supervisors. Tr. 449-50. He also opined that Plaintiff was seriously limited in her ability to deal with normal work stress and unable to deal with the stress of semiskilled and skilled work. Tr. 449-50.

In his decision, the ALJ incorporated several nonexertional limitations into Plaintiff's RFC: Plaintiff would be (1) limited to unskilled work; (2) limited to a static environment with only occasional changes in assignment; (3) precluded from fast-paced or strictly time-limited tasks; and (4) able to interact occasionally with coworkers and supervisors, except that she should generally work alone on tasks with minimal social demands. Tr. 20. The ALJ reasoned that Plaintiff's "depression limits her to unskilled work and precludes exposure to the stress of fast-paced work," while her anxiety "limits . . . her tolerance for interactions with others and for changes in the workplace or assignment." Tr. 25.

In reaching these conclusions, the ALJ did not give controlling weight to any medical opinion. The ALJ gave little weight to the opinion of the state agency consultant, S. Hennessey, on the basis that Hennessey had misinterpreted Dr. Ippolito's consultative opinion. Tr. 24. The ALJ gave little weight to the opinions from Plaintiff's treating sources, Dr. Maddi and Dr. Wolin. The ALJ gave partial weight to the two consultative opinions, though he gave Dr. Ippolito's opinion "greater weight as to [Plaintiff's] social and concentration impairments during this period." Tr. 24. As to Dr. Ippolito's opinion, the ALJ rejected her view that Plaintiff was markedly limited in dealing with stress, on the basis that Plaintiff had performed "adequately" during the "fairly stressful circumstance of a consultative examination by a stranger." *Id.* He also noted that Dr. Ippolito's opinion was "[t]o some degree" reliant on Plaintiff's subjective reporting. *Id.* As for Dr. Santarpia, who opined, *inter alia*, that Plaintiff was only mildly impaired in her ability to interact with others, regulate emotions, control behavior, and maintain well-being, the ALJ found

6

that portion of her opinion unpersuasive because it was inconsistent with the record as a whole. *Id.*

As Plaintiff points out on appeal, the problem with the ALJ's RFC analysis is that the ALJ purported to craft Plaintiff's stress-related limitations without the benefit of a medical opinion. *See* ECF No. 19-1 at 14-15.  This constitutes error.

"Specific limitations included in an RFC, like the RFC as a whole, must be based on evidence in the record, not on an ALJ's own surmise." *MaryAnne V. v. Comm'r of Soc. Sec.*, No. 20-CV-412, 2021 WL 3560584, at *2 (W.D.N.Y. Aug. 12, 2021) (internal quotation marks omitted).  The evidentiary basis for a particular limitation can come from a variety of sources.  "A medical opinion, a claimant's testimony, or information contained in the medical records can oftentimes be sufficient to support a given [restriction]." *Id.*  The ALJ is "free to partially credit, or otherwise make reasonable inferences from, the evidence to determine a claimant's functional capacities and limitations"; he need not limit the RFC only to those "limitations explicitly identified in the record." *Id.*  On appeal, a court must "must defer to the ALJ's factfinding" unless "a reasonable factfinder would *have to conclude otherwise*." *Id.*

But the deference afforded to such factfinding "does not give an ALJ the license to arbitrarily craft functional limitations," *id.* at *3, for example, by "splitting the difference" between two opposed positions.  *See, e.g.*, *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order) (where some evidence showed "total loss of function" to claimant's hand and other evidence showed no loss, the ALJ could not conclude that claimant had "fifty percent capacity").  Nor does the ALJ's authority to make factual findings permit the ALJ to "play doctor." *Nancy B. v. Comm'r of Soc. Sec.*, No. 19-CV-6574, 2021 WL 716705, at *3 (W.D.N.Y. Feb. 24, 2021).  Because the ALJ is a layperson, his "ability to make inferences about the functional limitations that an

impairment poses does not extend beyond that of [a] layperson." *Id.*  For this reason, the ALJ "may not interpret raw medical data in functional terms." *Id.*; *see also Kemp v. Comm'r of Soc. Sec.*, No. 19-CV-282, 2020 WL 5016684, at *3 (W.D.N.Y. Aug. 25, 2020) ("[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.").

In this case, the ALJ quite explicitly claimed to strike a middle course between the medical opinions to arrive at his RFC findings related to stress.  He rejected three of the medical opinions outright—those of Hennessey, Dr. Maddi, and Dr. Wolin.  Tr. 24-25.  The ALJ then proceeded to give partial weight to Dr. Santarpia's and Dr. Ippolito's opinions, finding Dr. Ippolito's "marked" stress limitation too much, while finding Dr. Santarpia's "mild" limitation on regulating emotions, controlling behavior, and maintain well-being—with no specific stress limitation—too little.  *See* Tr. 24.  Having rejected all of the opinions in relevant part, he identified several functional restrictions that, in his view, sufficiently accounted for Plaintiff's intolerance to the "stress of fast-paced work": she was limited to unskilled work in a static environment with occasional changes in assignment and no fast-paced or strictly time-limited tasks.  Tr. 20, 25.

The only inference the Court can draw from the ALJ's stated rationale is that he relied on his own interpretation of the record evidence—rather than the opinions expressed by the medical sources in the record—to craft Plaintiff's stress-related functional limitations.  *See* Tr. 24-25.  "This attempt to proverbially 'split the baby' between opposing medical opinions, at least without some more substantial evidence as to residual functionality, is improper." *Michael S. v. Comm'r of Soc. Sec.*, No. 19-CV-1479, 2021 WL 856908, at *8 (W.D.N.Y. Mar. 8, 2021).  In other words, the ALJ's analysis would only be appropriate if he could otherwise draw common-sense inferences

8

from the record, like any layperson, to arrive at his specific findings.  But in crafting the RFC, the ALJ did not cite evidence from which ordinary, common-sense inferences could be drawn to reach the stress-related limitations.  Rather, the ALJ engaged in a much more complex evaluation of Plaintiff's reports and hearing testimony, along with the treatment notes and clinical findings, to determine the functional limitations resulting from Plaintiff's anxiety and depression.  *See* Tr. 19-23.  He did not have the requisite expertise to do so.  *See, e.g.*, *Tavion T. v. Comm'r of Soc. Sec.*, No. 20-CV-514, 2021 WL 1559243, at *4 (W.D.N.Y. Apr. 21, 2021) ("[A]n ALJ cannot make common sense judgments about mental health impairments." (internal quotation marks omitted)); *Maxwell H. v. Comm'r of Soc. Sec.*, No. 19-CV-148, 2020 WL 1187610, at *7 (N.D.N.Y. Mar. 12, 2020) (collecting cases); *Crawley v. Berryhill*, No. 16-CV-271, 2018 WL 2354984, at *4 (W.D.N.Y. May 24, 2018) ("[T]he ALJ was not permitted to simply rely on his own lay interpretation of Plaintiff's psychiatric records.").  An ALJ is of course free to analyze medical records "to determine what the weight of the evidence supports," but that does not give him a license to interpret "raw medical data that would require the expertise of a physician or other trained medical source."  *Genito v. Comm'r of Soc. Sec.*, No. 16-CV-143, 2017 WL 1318002, at *11 (N.D.N.Y. Apr. 7, 2017).

The Commissioner responds that Dr. Ippolito's "marked" stress limitation could be interpreted as consistent with the RFC, which would thereby provide the necessary support for the ALJ's stress-related RFC findings.  *See* ECF No. 23-1 at 6-7.  As a general matter, the Court does not necessarily disagree that stress-related restrictions like those identified by the ALJ may be consistent with a "marked" limitation in appropriately dealing with stress.  *See, e.g.*, *Danielle B. v. Comm'r of Soc. Sec.*, No. 19-CV-996, 2021 WL 766857, at *4 (W.D.N.Y. Feb. 26, 2021) (collecting cases).  But it is clear that the ALJ did not interpret Dr. Ippolito's "marked" stress

9

limitation as supportive of his opinion; rather, he specifically disagreed with it, finding it inconsistent with her examination findings and reliant on Plaintiff's subjective reports. *See* Tr. 24. The Court cannot ignore that the ALJ expressly rejected that portion of Dr. Ippolito's opinion and proceeded to craft stress-related limitations without relying on it or any other medical opinion. *Accord Alazawi v. Comm'r of Soc. Sec.*, No. 18-CV-00633, 2019 WL 4183910, at *4 (W.D.N.Y. Sept. 4, 2019) ("This court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

Accordingly, remand for further proceedings is warranted.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 23) is DENIED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 19) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 1, 2022
     Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            United States District Judge
                                            Western District of New York